587 Ramadei v. Radiall USA. Good morning, Your Honors. Andrew Butz, appellate counsel for defendant Radiall. Stephen Hughes is with me today. He tried the case below. We're here today primarily to make sure that Woods v. Start, a 2017 decision by this court, one that unfortunately did not follow the law at the time, which was undermined in 2024, after the trial in this case, by the Looper-Bright case. It is overruled, so it cannot do any further damage in this circuit. Can I ask you, on that point, what do you make of our decision in DeBeek v. Garland, where we said that the way we read the Supreme Court's decision in Looper-Bright, we understood it to say that Looper-Bright does not provide an adequate basis for disturbing stare decisis with respect to our statutory interpretations? The cases that were cited by... I'm talking about DeBeek in particular, where we said that. That's not an FMLA case, and it's not an employment law case. No, it was about Looper-Bright and stare decisis. Of course. So how do you deal with that? I don't deal with it first by saying that Looper-Bright itself explains that the test for continuing, allowing former cases to continue, is whether they were correctly decided, whether they were constitutional, and whether there has been... I think the test is whether there's been a break in the law that distinguished... Right, but they said Looper-Bright said that our case, they're saying our decision right now in Looper-Bright is not an adequate basis for disturbing stare decisis. I... So they said it's not a break, and we said that in DeBeek. We said that's how we read Looper-Bright's discussion of stare decisis. Okay. Looper-Bright is an immigration case, and Looper-Bright did not suggest that it was leaving in place appellate decisions that are at odds in the particular area with Supreme Court precedents like Nassar and Gross and Woods. And I'm sorry, Nassar, Gross, and Comcast. Comcast decided afterwards in 2020, which this Court has followed in three cases already, not in the FMLA effort, but with regard to other employment claims. And that is correct. In other areas, the Court has applied the but-for test that you're advocating. But before we get to the merits of whether Woods should be overturned or not, I'm curious why you didn't make that argument to the district court. I looked at your proposed jury instructions. You requested the motivating factor test for causation. You didn't request the but-for. You didn't say, oh, Judge, but Woods was wrongly decided. And in your post-trial motions, after Looper came out, you didn't raise this argument. So how have you not waived it? Can you explain to me why that argument is not waived? Yes, Your Honor. I think at first, sorry, for a waiver to take place, we would have had to have known that we had a right. In this circuit, vertical precedent controls. Even recently, in the Mady case, to which I just referred, Judge Torres points out that after Looper-Bright, there's a question about whether you know. I understand that point, counsel. You rely on an 11th Circuit case that came out before Looper-Bright. But in your post-trial motions, Looper-Bright had already been issued. So why not raise it in your post-trial motions? Say, hey, district court, we need a new trial because there's been a game changer here. The law has changed. But you didn't make that argument. The fact is that that did not occur. And it did not occur because if Mr. Hughes didn't see, wasn't aware of Looper-Bright, and I don't believe he was, it did not connect. Looper-Bright is in a very different area. We're not all generalists. Immigration law is very different. No, I'm not asking for counsel. I just want to be clear that it wasn't raised. Correct? It wasn't raised, but it wasn't raised because it would have been futile, especially after trial. You know, Judge Hall had already decided in an earlier case, 2022 case, it's Connecticut Container, to follow Woods and denied summary judgment on essentially the same kind of basis that happened in our case. In our case, she followed it again. It would have been futile to ask for that argument. Well, except the district court never had the chance to consider the argument you're making here now. And that argument was available. Maybe not known, but available. It is available in every case where there's a possibility that the law might be changed during the course. And in this particular case, the plaintiff was given an unfair advantage by Woods, which is unconstitutional at the time it was made. It was made on the basis of an incorrect construction. Can I flip around my earlier question? I was asking why. I'm sorry.  No, no. Thank you. My earlier question was why DeBeek doesn't foreclose your argument that this panel is entitled to overrule Woods in light of Loper Bright. Let me flip it around. Are you aware of any case in a decision from this Court stating that a panel is authorized to overrule a prior interpretation of a statute based on Loper Bright? I'm not aware of a case that says that the panel can't. No, no, no. I know. That was my earlier question. My first one is, well, there are two. There's Garcia-Pinnock and there's DeBeek saying you cannot. So I'm asking you, are you aware? And you were trying to argue that that's limited to immigration, I suppose. And I was asking you the flip side. Are you aware of any cases perhaps in other contexts outside immigration where this Court has said that a panel can overrule a prior precedent based on Loper Bright? I believe that you can. No. I'm asking for a case. I don't know of a case. That's fine. It could be the first time. I just was wondering.  And are you the Supreme Court cases you rely on for support that the Woods got it wrong, the Woods panel got it wrong, and it should be a but-for causation test, they all occurred prior to Loper Bright. So they were in existence and available to this Court to consider, correct? Yes, they were, Your Honor. Your Honor, quite frankly, one of the most astounding things about the Woods case is that when they won at trial, the trial judge in that case correctly relied on Nasser and Gross as a basis for using but-for. It was overruled. The counsel in that case, for whatever reason, didn't seek reconsideration in this Court and didn't seek certiorari. I could tell you, had I been that person, and I am not an expert on climate discrimination law, I would have pressed my client to take it to the Supreme Court. It's wrong in every single factor, including not even construing the FMLA correctly. And the Lapham case, we cited for two reasons. One, that the – it rebuts how Woods now analyzed the FMLA and points out that silence would not be a good – or causation would not be a good reason for going to – Except other circuits have agreed with the Second Circuit, right? The Third Circuit, with regard to FMLA, has applied the motivating factor of causation. The Sixth Circuit, a mixed motive. And the Fifth Circuit, a mixed motive. Correct? For FMLA cases. In some earlier cases, yes. But in the Third Circuit, the Eakin case, it was one such case. But in two cases that we cite in our briefs, you know, the trial court actually decided that it was not going to follow the, you know, the Loper-Bride change thing. Well, Eakin was 2017, the same year as Woods, right? Which was? Eakin was the same year as Woods, 2017. I think that's right, actually. I might not have remembered that. As for the other circuits, what we now have, and we've brought a handout about it, there are now at least five circuits that are – they are – have ruled that for FMLA cases, but-for is the correct test. None of those cases happens to cite Loper-Bride, but they – so they made that on independent grounds. And in our opinion, though, the most insightful case is the Eleventh Circuit case in Lapham. Two other Eleventh Circuit cases was followed applying it. We have a circuit split, and at this time, Woods is on the short end of the stick. The Eleventh Circuit, though, relied – didn't it source the retaliation claim in Subsection 2, and we, in Woods, sourced it in Subsection 1? Is that correct? Yes, but- And that decision, as I recall, that portion of Woods was not based on Loper-Bride. Is that correct? No. That's the compound question. I have to answer you part – you know, one step at a time. Okay. If you look at the FMLA as it was analyzed in Lapham, there are three sections that they point to that deal with retaliation. Two of them expressly include but-for through the words because of. There's a third section which does not expressly refer to retaliation. That's the one that Woods relied on, and that leaves Woods in a position- And that was my question. That portion of the Woods opinion, if I recall correctly, did not rely on Chevron. Is that correct or not? That portion of the – that's right. It did not rely on Chevron. But what it did was it ignored Nassar. It ignored Woods. And I'm sorry, Nassar and Gross. I have a problem with Gross. But more importantly, if they didn't construe the statute right, what they did- It ignored them. It said that those have – the statutes in those cases use the word because and the provision, the subsection 1 here, did not. But if you have read Nassar and Gross, you understand that unless motivating factor is expressly set forth in the statute, you must follow but-for. That's the rule from the Supreme Court. And therefore, Woods, in taking a silent section in an overall statute that has but because of elsewhere, was taking unfair advantage. I do not think that is an acceptable construction of the statute. You may have an argument on that. I think the harder question for you, though, is why this is a case where we revisit that. We have – we're stuck with our precedent. And I don't see how Loeb or Bright changes what Woods does for us. The problem – the Loeb or Bright problem with Woods is that if you look at the wording from the Labor Department regulations that are involved in that case, the key phrase is a warning to employers. You may be vaulted in damages. You may become guilty for damages. That's not permissive language. No, I think the problem, if I'm understanding the point that's being made, is the stare decisis force of Woods is your problem, as we have said in DeBake and Garcia-Pinot, that this panel may not have authority to even consider your argument given the force of stare decisis, as we've stated. I believe, and in our – in one of our briefs, we cite to Justice Barrett's law review article that emphasizes that even for stare decisis purposes, vertical obedience is very different from lateral obedience. And it's so important that your rules ought to have said that so that a party in our position, if you can't change it, you three, we should go immediately for unbanking. And that's an easy change in the rules if that's what you want. But that's not – it really isn't fair in hindsight. Okay. You reserved three minutes. I did. Good morning, counsel, Your Honors. May it please the Court. The critical question before you today is whether Woods is still good law in light of the Supreme Court decisions in Loper-Bright and in Comcast. The answer is yes. The causation standard for FMLA retaliation cases under 2615a1 is a motivating factor. That is controlling law in our circuit, and it was appropriately applied by the district court. For starters, the appellant has waived this argument by failing to properly preserve it at any stage in the lower court. This includes in their summary judgment briefing, at the time that the verdict slip was created, and in pre- and post-verdict motions, which failed altogether to preserve any argument related to the causation standard. Certainly, you always have the right to preserve. In fact, appellant proffered the motivating factor standard as controlling at each stage in litigation at the lower court. That was their strategic decision, and we should not change it now. Assuming, though, that we can, let's take a look at the relevant cases. First, Grosser — excuse me, Grosser — Gross, Nassar, and Comcast were all decided and published prior to this trial in December of 2023. Of course, Woods has been the law in our circuit since 2017. Loper-Bright does not change or disturb that because it specifically held that prior statutory interpretations remain good law, even if they relied on Chevron deference. The Court stated, we do not call into question prior cases that relied on the Chevron framework, specifically, of course, referring to stare decisis. Many courts of appeals throughout the country have followed Loper-Bright in declining to revisit the Chevron-era decisions, this one included. In Garcia-Pinnock, this Court declined to revisit its earlier decision in DeBeek in light of Loper-Bright. This Court should do the same here in regards to the motivating factor causation standard as set forth in Woods. Sotomayor, I would like to ask you about the case of the 11th Circuit decision, Latham v. Walgreen, which your opponents rely on, which applied the but-for causation in the context of an FMLA, however, retaliation claim. That decision was out before trial in this case, am I correct? That decision came out in 2023. The 11th Circuit decision. Yes, Your Honor. The 11th Circuit. So your opponents were aware that there was at least one, that the circuit they're relying on, they had that opinion. Certainly, during the trial and, I mean, you can't speak for their, I'm not asking for their awareness. I'm asking for factually that decision was out there. If you wanted to raise a claim, hey, maybe this motivating factor shouldn't apply. Sure. Of course, I can't speak to what counsel knew at the time. But, yes, it was out there. But so were Gross, Nassar, and Comcast, right? These were all out and decided. And Loper, great. Chevron was in jeopardy then. Yeah, but you made the point. And those cases didn't involve, you know, Gross was an ADA claim. The other one was a Title VII. Nassar was a Title VII claim and a retaliation claim. What I'm talking about is a circuit decision within the context of FMLA claim and applying a different causation standard. That existed at the time of trial. Sure. That's all I'm questioning. And it wasn't raised, of course, in the lower court. And I mentioned that case because that is a case that your opponents seem to rely on for support to change the causation test. Certainly. There certainly was no Supreme Court precedent, right? And the precedent in controlling law in our circuit was Woods. It was good law then, and it remains good law now. This Court took a look at this in Garcia-Cannock, where Petitioner argued because immigration statute interpretation was based on Chevron deference and the Supreme Court in the Second Circuit was obligated to revisit and revise prior statutory interpretation. This Court disagreed and stated that the general rule of stare decisis stands. So the Loper-Bright Court elected not to call into question these prior decisions that relied on the Chevron framework. Hence, Loper-Bright provides no basis to disregard Woods, whether or not Loper-Bright was ever decided. It's the same because stare decisis applies. And that Court did follow that same trajectory and reached the conclusion not to undo the statutory interpretation that it had previously relied upon in DeBeech. Can I just ask how? Of course. For you to win on this point, how deep does this panel need to get into all of these various arguments? Because it seems that one version or layer of your argument is that this argument was never presented to the district court. In the normal course, it could be reviewed by this Court only for plain error, which would mean it has to be plain or obvious now at the time of appellate adjudication. And that in general, to find something plain, we need to have either a Supreme Court case on point or a decision of this Court on point. And there are no such cases. It would require an extra step to say, well, no, Loper-Bright requires us to rule Woods. But you're saying, no, Woods is in place. So any error certainly was not plain. Is that sort of, let me say, sort of an Occam's razor, the simplest way that you were winning or no? A hundred percent, right? It doesn't require really much review after that. However, there are a number of distinctions between the cases that the appellant has relied on in asking you to revisit Woods that fail, but that I certainly could address. I want to speak just for a second on the way Woods was decided and why it is still good law, which is because, in part, it only deferred to the agency interpretation in one portion. This Court also did its own review of the language of the Second Circuit. It independently reviewed it. It also considered and rejected the arguments of the Supreme Court rulings in both Nassar and Gross requiring but-for causation. Aren't you referring to the analysis of just the absence of the word because comparing Gross and Nassar? But that was, I thought, in the context of finding the language and the U.S. deciding to defer to the DOL. So, I mean, that is sort of a statutory analysis, but really it is, I would say, under Chevron. It's under. I don't think it's under Chevron, Your Honor. I think it's an independent statutory interpretation of what the language of the statute says, which leads directly into why Comcast is so different from what we're doing here. The judge Gorsuch in Justice Gorsuch, excuse me, in Comcast really took a hard look at the language of the statutes at issue there. And that wasn't just 1981. It was its neighboring statute, 1982, and the Civil Rights Act of 1866, where all of that language was identified because of color, on the basis of, et cetera. And what the Woods Court looked at was that there's no precedent in the FMLA language. There is no language like that in the FMLA language where this Court could reasonably say, well, the congressional intent was but for standard of review. That's – that's – it's simply not there. So looking at Woods, not just applying Chevron deference, also interpreting the plain language of the FMLA, looking at whether or not there's any Supreme Court decision that would be in the circuit, which is the motivating factor standard is the right one for FMLA retaliation claims under 2615. I see that I've run out of time. If there are any questions, I'd be happy to take them up. Otherwise, we'll rely on our brief and our argument today. Thank you, counsel. Thank you, Your Honor. Your Honor, in reply, first off, I'd like to modify and clarify my response to one of the earlier questions. Loper-Bright itself explains the proper test for dealing with something that would otherwise be stare decisis. It's – you've heard these words before in various contexts, but it's right there in Loper-Bright. First, we independently determine the scope of Congress's delegation of authority to the agency. Second, we ensure the delegation doesn't violate the Constitution. And third, we determine whether the agency's interpretation stays within the scope of the delegation. There is absolutely nothing – No, no, that's the part where they overrule Chevron. That's – you're reading the part where they overrule Chevron, saying Chevron's out the window. There's a different part that's later that they say, but nevertheless, our pre-Loper-Bright decisions have stare decisis effect. And I understand you're making an argument about Justice Barrett's Law Review article about the difference in stare decisis effect in the courts of appeals as opposed to the court – but the part you just read is not the stare decisis part. No, I – in the immigration context, Your Honor, there are – Loper-Bright is not an immigration case. Loper-Bright isn't a – It was like the National Maritime Fisheries Act. Oh, then I may be – I – We called Garcia-Pinock, where we applied Loper-Bright, was an immigration case. But Loper-Bright was the Secretary of Commerce. Thank you for clarifying that. It was not an immigration case. Okay, but it's – but it is not a case involving – employment law, Gross, Nassar, Comcast. Those are – I guess I'm – I am not following why that is relevant. Because if you're saying that it's not the – what, the stare decisis portion of Loper-Bright is not relevant, that would be like arguing that their dismissal of Chevron is also not relevant in the employment context. But it seems to me you have to carry all of Loper-Bright over or none of it. No, I don't – I don't believe so. And that's one reason why we rely strongly on Nassar and Gross and Comcast, because they're the law. They are – you know, if you have two points, you can put any curve through it. Three points in a straight line, we're – the common feature is but for causation. It happens to be because of language, but it could be any kind of causative language. The Supreme Court is not going to abandon Gross and Nassar and Comcast for the FMLA and apply – continue to apply it for other things. What will happen in the Supreme Court is they will say the Fourth – the Second Circuit and others have to come into conformity with the straight line, which is that all claims created by Federal statutes are but for causation, for really good reasons that you know of from our brief. And it has to be expressly stated in the statute that some other lesser rule applies. And then that's tested by constitutionality and other interests to make sure that due process and separation of powers in the sense of looking full overbrite is not offended. This is a big case, members of the Court, and I understand your reluctance, but I think your discretion, your informed discretion, and the interest of the Court as a whole would, I can say, compel in my view, but implore you to write an opinion in this case that's other than ducking the issues. You know, Woods should have been dead long ago. It just happens that there are only four people in the United States that have written anything about that other than one case that's mentioned it. That's two judges in the Second Circuit trial courts and Andrew Woods. This is something that's long overdue for fixing, and the fact that our client got trapped in this lacuna and was fined $770,000 is really important to them, but this case is really important about straightening out American employment discrimination law. Thank you very much. Thank you, counsel. Thank you both. We'll take the case under advisement.